**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

<table>
<tr><td>CLOW VALVE COMPANY,<br>a division of McWane, Inc.</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Plaintiff</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Case No.:  JFM 02 CV 3136</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>MAYOR and CITY COUNCIL OF<br>BALTIMORE CITY</td><td>)<br>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendant.</td><td>)</td><td></td></tr>
</table>

**DEFENDANT, MAYOR AND CITY COUNCIL OF BALTIMORE CITY'S, REPLY TO PLAINTIFF, CLOW VALVE COMPANY'S COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO DEFENDANT'S RESPONSE TO <u>MOTION FOR SUMMARY JUDGMENT</u>**

Mayor and City Council of Baltimore City ("the City"), by Justin J. King, Principal Counsel, Robert D. Anbinder, Assistant Solicitor, and Nicholas Johansson, Assistant Solicitor hereby files this Reply to Clow Valve Company's Combined Memorandum and for its reasons says:

<u>**INTRODUCTION**</u>

In its Combined Memorandum, Clow Valve is profoundly dismissive of the City's position that the many contracts and Purchase Orders attached as exhibits to the City's Cross-Motion dictate the nature and terms of the relationship between the two parties and, thereby, the resolution of this case. Parsing Clow's bluster, it becomes clear that the Company never disputes many of the City's critical contentions, including those surrounding the expiration of contract BP-99083 and Purchase Order P179565 under which Walter Blimline allegedly

ordered the valves, and that the only existing Purchase Order at the time of the alleged order was in the amount of $87,500.[1]  Clow also virtually concedes that Walter Blimline had no authority to place the alleged subject order.[2]  Clow appears to have a low degree of confidence that it would prevail under the documents, facts and theories set forth in the City's Cross-Motion.

Instead, Clow relies on "summary judgment arguments based on the legal and equitable theories of ratification and unjust enrichment"; arguments which allow it to deem irrelevant each and every one of the duly approved and executed contracts and Purchase Orders in this case.[3]  (Clow Combined Memorandum at 17.)

The City did not ratify the alleged order and under the law could not have done so until it knew all the facts surrounding the transaction at issue.  Once it knew those facts, the City clearly and unequivocally repudiated any order which may have been placed.

The City was not unjustly enriched by the delivery of the valves nor, despite Clow's hope that it "tips the equities" in its favor, does the City's current

---

[1] Clow states, and the City agrees, that this Court's agreement with the City's argument on this point "would require the Court to conclude that the City is liable to Clow for a fraction of the purchase price of the valves…" (Combined Memorandum, at 5 n.2.)

[2] "Ratification," says Clow of its main argument, "assumes a lack of authority. (Combined Memorandum, at 11.)

[3] Clow's ratification argument says "[r]egardless of the actual extent of Blimline's authority to place the September 7, 2001 order…" (Combined Memorandum, at 10.)

The City takes exception to the tone of Clow's statement that the point of its argument "continues to allude (sic) the City." (Combined Memorandum, at 17.)  Clow's arguments are clear to the City, just as it should be clear to Clow (and this Court, it is hoped) that one ground of the City's summary judgment motion is that the contract documents and <u>Gontrum</u> hold the key to solving this dispute.

valve solicitation relate to the subject valves in any way, or somehow create an unjust enrichment where there was not one before.

For the reasons stated below and in its Cross-Motion for Summary Judgment, the City is entitled to prevail as a matter of law.

## ARGUMENT

### I.    THE CITY CLEARLY AND UNEQUIVOCALLY REPUDIATED THE UNWANTED VALVE DELIVERIES

In its Combined Memorandum, Clow claims the City ratified the order because it failed to repudiate it immediately after the valves arrived- that is, that the City did "nothing upon learning that the valves were being delivered." (Combined Memorandum, at 8.)

Walter Blimline was to order valves only at the instruction of his supervisors. (Williams Deposition, at 18, 20, 23-24, 43, Exhibit Q.[4])  There is no evidence that anyone instructed him to order valves or that anyone other than Blimline may have been expecting valves to arrive.

Clow compounded the problem by confining its communications with the City to Blimline until after the delivery of the valves.  However, the City definitely and unequivocally repudiated the order through the City's Chief of Utility Maintenance Division for Water and Waste Water, Warren Williams, as soon as he became aware of the facts and issues surrounding their delivery.[5]  To this date, Clow refuses to retrieve its valves.

---

[4] The lettered exhibits refer to the exhibits attached to the City's Cross-Motion.

[5] The facts regarding this matter are more fully set out in the City's Cross-Motion. (Cross-Motion, at 28-29.)

**II.    THERE WAS NEITHER CORPORATE APPROVAL OF THE ALLEGED VALVE ORDER NOR RATIFICATION  OF THE "ORDER."**

The City not only did not ratify the alleged valve order, it clearly and unequivocally repudiated that order within a reasonable time period of receiving notice of the facts surrounding the valve shipment.   "Ratification requires an affirmative act on behalf of the principal, coupled with an intention to ratify, *and knowledge of all material facts.*" Fearnow v. Chesapeake & Potomac Tel. Co., 104 Md. App. 1, 53 n.47 (1995)(emphasis added), rev'd on other grounds, 342 Md. 363 (1996); also see Smith v. Merritt Savings and Loan, 266 Md. 526, 539 (1972);  Huppman. v. Tighe., 100 Md. App. 655, 668 (1994).   Clow fails to meet its summary judgment burden to demonstrate that the legal requirements necessary to constitute ratification by the City were satisfied.

**A.    Only the City's Board Of Estimates could ratify this "order."**

Clow argues that even if Blimline was not authorized to place such a large order, either he, Warren Williams, August Severn, or various low-level employees at the Washington Boulevard Yard, where the valves were delivered, ratified the order on behalf of the City.   Clow's argument presumes that persons who had no authority to purchase the valves in question could ratify the alleged order.[6]   This presumption is false.

---

[6] "No representation, statement, promises or acts of ratification by officers of a public corporation can operate to estop it to assert the invalidity of a contract where such officers are without power to enter into such a contract on behalf of the corporation." Gontrum, 182 Md. at 378.  The Baltimore City Charter generally states that the Board of Estimates is required to approve contracts over $5000 thus the only governmental body that could have ratified the $600,000 valve shipment from Clow would be the Board of Estimates, which approved the original contracts. (Baltimore City Charter, Art. VI, §11(e)(Exhibit X). The Board never considered ratification of the alleged order.

In fact, Clow's entire ratification argument rests on a false premise of who can ratify contracts on the City's behalf.   None of the people Clow refers to (Blimline, Severn, Williams) were empowered to create a new contract or modify a current contract.   There is no evidence that Warren Williams has any more authority to bind the City to a new contract than Walter Blimline does.

Only the Board of Estimates -- the corporate entity designated by the Baltimore City Charter to approve contracts can legally enter into a contract of this nature-- and only the Board could have legally ratified the Clow "order." (Baltimore City Charter, Art. VI, §11(e)Exhibit X; Cross-Motion at 16); See Gontrum, 182 Md. at 375 ("A municipal corporation cannot be held liable for the unauthorized acts of its agents, although done officii colore, without some *corporate act of ratification of adoption….*". )(emphasis added).[7]

Clow provides no evidence that the Board of Estimates performed any of the steps constituting ratification: 1) performing an affirmative act to ratify; 2) having the intent to ratify; and 3) having knowledge of the material facts concerning the transaction.  Fearnow, 103 Md. App at 53 n.47; Smith, 266 Md. at 539;  Huppman, 100 Md. App at 668.

**B.      The Board of Estimates had no knowledge of the material facts concerning the alleged valve "order."**

For the City to have ratified the actions of Walter Blimline the City must

---

[7] "Colore officii"-   By color of office. Officer's acts unauthorized by officer's position, though done in form that purports that acts are done by reason of official duty and by virtue of office. (Black's Law Dictionary  265 (6th ed.)

have known the material facts surrounding the transaction.[8] Fearnow, 104 Md. App. at 53 n.47 (1995); Smith, 266 Md. at 539; Huppman, 100 Md. App. at 668.

Clow's ratification arguments are largely built upon the actions and inaction of the same unauthorized low-level employee who allegedly ordered the valves. The undisputed fact is that there is no evidence that anyone with the authority to ratify the alleged order was in possession of the material facts to even contemplate its ratification.[9]

III.    **WHETHER WALTER BLIMLINE "ENTERED" INTO A CONTRACT OR "EXCEEDED" ONE, GONTRUM REQUIRED CLOW VALVE TO INVESTIGATE THE NATURE AND EXTENT OF HIS AUTHORITY BEFORE ACCEPTING THE ALLEGED ORDER.**

The City agrees with Clow that there is no dispute that the parties entered into a requirements contract to facilitate the City's purchase of valves, that "the City had issued a specific purchase order pursuant to that contract" authorizing that purchase and that Walter Blimline was "the individual generally authorized to place such orders" on behalf of the City. (Combined Memorandum, at 11.)

The City also agrees that "the authority-related issue the City is raising" is "the extent to which Blimline could place an order on behalf of the City *in excess*

---

[8] "An unauthorized act in the name of a corporation may, of course, be subsequently ratified by the acceptance of the benefits of the act, but '[a]cquiescence in, or the receipt and retention of the proceeds and benefits of, an unauthorized transaction do not amount to ratification if not accompanied by knowledge of the material facts concerning the transaction.'" Linden Homes, Inc. v. Larkin, 231 Md. 566, 570 (1963) quoting Webb v. Duvall, 177 Md. 592 (1940).

[9] However, as soon as Blimline's supervisor, Warren Williams, became of aware of the details he repudiated the alleged order for valves. (Williams Deposition, at 34-36, Exhibit Q). It is important to note that Williams did not have authority to ratify the order on behalf of the City.

*of* the amounts specifically listed in the contract and corresponding purchase order." Id. (emphasis in original).

But the City rejects Clow's claim that this issue is not covered by Gontrum v Mayor and City Council of Baltimore which, Clow says, "deals expressly with the authority of a municipal employee to *enter into* contracts on behalf of the municipality," and "does not speak to that issue" raised by the City. 182 Md. 370 (1943)(Combined Memorandum, at 11.)(emphasis added.)

In essence, Clow argues that the nature and extent of Blimline's authority isn't controlled by Gontrum because he wasn't *entering* into a contract; he was merely *exceeding* one, albeit by approximately 500% and with non-conforming goods. Clow relies on semantics to dismiss Gontrum as a factor.

It is easy to see why Clow seeks to remove Gontrum as a threat, since the case states that:

> [i]t is a fundamental principle of law that all persons dealing with the agent of a municipal corporation are bound to ascertain the nature and extent of his authority. *Dillon's Municipal Corporations*, 5th Ed., Sec. 777. A municipal corporation is not bound by a contract made in its name by one of its officers or by a person in its employ, although within the scope of its corporate powers, if the officer or employee had no authority to enter into such a contract on behalf of the corporation. 38 *Am. Jur., Municipal Corporations*, p. 183. 182 Md. at 375.[10]

---

[10] Gontrum is quoted more at length in the City's Cross-Motion. (Cross-Motion, at 19-25.) Also see Lipsitz v. Parr, 165 Md. 222, 227-228 (1933) ("Everyone dealing with the officers and agents of a municipality is charged with knowledge of the nature of their duties and the extent of their powers, and therefore such a person cannot be considered to have been deceived or misled by their acts when done without legal authority."); Scofield Engineering Co. v. City of Danville, 126 F.2d 942 (4th Cir. 1942) ("All persons dealing with a municipal corporation are charged with notice of the limitations upon its power. Those limitations may not be exceeded, defeated, evaded, or nullified under guise of implying a contract.")

Clow's efforts to distinguish <u>Gontrum</u> from the facts of this case fail, for that case expressly states that "no estoppel as applied to a municipal corporation can grow out of dealings with public officers of limited authority *where such authority has been exceeded*, or where the acts of its officers and agents were unauthorized or wrongful. 182 Md. at 372.

<u>Gontrum</u> applies even under Clow's reasoning of the case.  As set forth in the City's Cross-Motion and unrefuted by Clow, regardless of the size of the underlying contract, City contracts are valid only to the extent of a purchase order validly approved by the City's Board of Estimates.[11]   A municipal employee who promises to pay for goods although he has no purchase order to cover the cost, seeks to enter into a contract to purchase those goods, although his efforts are unauthorized.[12]  Where that employee seeks to modify the terms of an underlying contract by ordering goods which do not conform to municipal specifications, he is also seeking to  "enter" into a contract, although he is unauthorized to do so.

The City denies that Blimline placed an order in any amount but, consistent with <u>Gontrum</u>, continues to concede that if this Court finds such an order was placed, he might have been viewed by Clow (had it actually investigated) as having the authority to bind the City up to $87,500, the amount

---

[11] Remarkably, Clow counsel, Otho M. Thompson, was Baltimore City Solicitor at the time Contracts BP-99083 was approved by the Board of Estimates. As Solicitor, Mr. Thompson headed the Department of Law which represented the Department of Public Works and the Department of Finance, including the Bureau of Purchases. He sat on the Board of Estimates and may well have personally approved the Clow Valve contracts at issue.

[12] Clow struggles with the concept that it is the purchase order, not the contract, which governs the amount expended by the City on products it wishes to buy.  Clow points out that "the City itself does not even treat these 'estimate[s]' as limits on its purchasing authority" since it issued Purchase Orders totaling $240,000 pursuant to an estimated $200,000 contract with Clow dated May 12, 1999. (Combined Memorandum, at 12 n. 7).  Clow helps make the City's argument that the Purchase Orders, not the contract, provide the spending authority to purchase goods.

of the only existing purchase order. (Exhibit O)[13].  Under <u>Gontrum</u>, the City can be responsible for no more.

Assuming all other facts to be the same, if Blimline had "ordered" $1 million in valves and a minimal payment was made as it was here, would Clow now contend it was owed $988,000 despite a purchase order limiting purchases to $87,500.[14]  If the "order" was for $5 million, would it contend it was owed $4,988,000.  At what point would even Clow determine it had a responsibility to investigate?  <u>Gontrum</u> mandates a duty to investigate when public money is at stake, no matter what the amount.

Having relied on Blimline (and only Blimline) for the purported orders of September 2001, the Company launches a blistering attack upon his conduct in the "post order" period as "patently unbelievable," "facially unbelievable," "self-serving," "misleading," and "at times, affirmatively deceptive." (<u>See</u>, <u>e.g.</u> Combined Memorandum, at 1, 5. 6.)  Clow also points to Blimline's "lack of recollection at all" and "confusing" testimony as to key issues and dates in this matter. (<u>Id.</u> at 6-7.)  It suggests he lied to his supervisors and may have "intentionally withheld" information from them for months.[15]  (<u>Id.</u>, at 3-4, 8 fn 4.) Such representations, whether or not true, highlight the wisdom of <u>Gontrum</u> which seeks to prevent the occurrence of disputes and potential municipal liability.

---

[13] The exhibit refers to the purchase order attached to the City's Cross-Motion.

[14] The City paid approximately $12,000 for certain valves in its yard, an act which Clow says is evidence of ratification.

[15]Though Clow says "the City" affirmatively misled it by trying to hide its mistakes and also increased Clow's damages, it apparently refers to Walter Blimline, rather than any specific act of the municipal corporation.   (Combined Memorandum, at 4.)

Clow's claims and contentions significantly impact public funds and the public good. Gontrum rightly recognizes that the better rule is to place the burden of investigating authority upon those relying on it. 182 Md. at 376. "[F]rom considerations of public policy, it seems more reasonable that an individual should occasionally suffer from the mistakes of public agents or officials, than to adopt a rule, which, through improper combinations and collusion, might be turned to the detriment and injury of the public." (Id.)

Finally (and curiously), Clow argues that Gontrum supports its argument that an "act of ratification or adoption" can render a municipality liable for the otherwise 'unauthorized acts of its agents.'" (Combined Memorandum, at 12, citing Gontrum, 182 Md. at 376.)   But Clow neglects to more fully cite the sentence, which says this must be a "*corporate* act of ratification or adoption." (182 Md. at 376)(emphasis added).   Clow cites individual actions in this matter that it says constitute ratification, but has pointed to no corporate act.

## IV.  CLOW VALVE'S HANDS ARE SOILED AND IT SHOULD BE DENIED EQUITABLE RELIEF

Clow says it is entitled to relief in this case because the actions of City employees would make it inequitable for it not to be paid.  It is Clow which is not entitled to, and should be denied, equitable relief because its hands are "unclean" in this matter.[16]

---

[16] "'[H]e who comes into equity must come with clean hands.' It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." Precision Instrument Manufacturing Co., v. Automotive Maintenance Machinery Co., 324 U.S. 806, 814 (1945).  "[O]ne's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any

It was Clow which by its own admission, ignored contracts and Purchase Orders, expiration dates, spending limits and proper procedures, as set forth in the various documents. It was Clow which by its own admission, never investigated the nature and extent of the authority of the individual with whom it was dealing.[17]    It was Clow which manufactured hundreds of thousands of dollars of valves more than the City was authorized to spend.  It was Clow which knowingly manufactured, then shipped valves which didn't conform to its City contract.  It was Clow which never communicated about the matter with any other City government employee or supervisor before or during the manufacture or shipping of its product.   It was Clow which confined its dealings to the same unauthorized low-level municipal employee it should not have relied upon in the first place.  It was Clow which didn't communicate with any City official until after the valves had been sitting on the City yard and the bills were unpaid.

Clow's claims affect the public fisc and touch upon the City's long-standing procurement process. This Court's determination of whether to apply the unclean hands doctrine is of "vital significance" in matters affecting the public.  Proper use of the doctrine "not only prevents a wrongdoer from enjoying the fruits of his

character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation" of the clean hands doctrine. New York Football Giants, Inc. v. Los Angeles Chargers Football Club, Inc., 291 F.2d 471 (1961)(citations omitted).

[17]Clow professes astonishment at the City's Cross-Motion in which it made the point that "no one from the City ever identified Walter Blimline as the person who bought Clow products for the City."  (Combined Memorandum, at 11 fn. 6).  The City was merely making the point that Clow failed to ask questions, investigate or confirm even the *basics* of the nature and extent of Blimline's authority.

.

transgression but averts an injury to the public." New York Football Giants, Inc. v. Los Angeles Chargers Football Club, Inc., 291 F.2d 471 (5th Cir 1961)(citations omitted).

Clow's actions created the situation from which it now seeks to profit. This Court should not now help it do so.

## V. THE CITY HAS DERIVED NO BENEFIT FROM HOLDING THE SUBJECT VALVES ON ITS PUBLIC WORKS YARD AND WAS NOT UNJUSTLY ENRICHED

The City repeats its denial that it has been unjustly enriched by holding onto valves which it did not order and does not want. Clow attempts to equate this case with that of SSDS v. Mayor and City Council of Baltimore, in which the plaintiff recovered under a theory of unjust enrichment. 2000 U.S. App. LEXIS 12270 (4th Cir. 2000.) In SSDS, plaintiff entered into a "Services Agreement" and spent "about six months evaluating the existing computer network, determining the school system's needs, developing a transition plan, and otherwise laying the necessary groundwork for the anticipated upgrade." Id. The services rendered by SSDS became entangled within the processes of the school system, quite unlike the discrete manufactured goods which the City never accepted, which Clow has refused to take back, and which continue to sit on a municipal lot.

And, despite Clow's noisy contentions to the contrary, the City cannot use the valves. Clow claims that it recently solicited valve bids for "tactical reasons." Clow draws the bold and unsubstantiated conclusion that this solicitation shows "[t]he City clearly could have used most or all of the other Clow valves it

purchased…"since the valves sought are "identical to Clow Valves now sitting in the Washington Boulevard DPW Yard."  (Combined Memorandum at 12.)

Unfortunately for Clow's argument, what it calls "the largest and most hotly contest valves involved in this case (the 30- and 36- inch valves)" are not "identical" to those on the City yard and cannot be used by the City, as further set forth in the Affidavit of August Severn, (Exhibit 1, attached hereto).[18]

## VI.    THE CITY DID NOT WAIVE ITS 'EXHAUSTION OF ADMINISTRATIVE REMEDIES' DEFENSE AND THIS CASE SHOULD BE DISMISSED

The City did not waive its defense that Clow failed to exhaust its administrative remedies as set forth under the contracts because this defense was part of the City's electronically filed Amended Answer to Complaint, on March 31, 2003.  (Amended Answer, at 6.)  This Amended Answer added Affirmative Defense No. 7, namely that "Plaintiff has failed to exhaust its administrative remedies as specified within the Contract at issue."[19]

The dispute at issue in this case arises out of the City contracts and is to be resolved within the confines of the dispute settlement mechanism established by the Contracts as agreed to by both parties.   (Cross-Motion, at 32.) Accordingly, the City asks this Court to enter judgment in favor of the City and

---

[18] Clow Valve seems to suggest that spite or ill will may be driving the City's motives in this case. (Combined Memorandum, at 14.)   The City objects to this charge as unseemly.

[19] The City presumes Clow's erroneous contention is merely an oversight, since City attorney Anbinder spoke with Clow Counsel Maneche soon after filing the Amended Answer and pointed out that the only new item added was the Exhaustion of Remedies defense.  While Mr. Maneche said that  the Amended Answer did not conform to the technical requirements of the Rules, Clow would not seek to strike the amendment and, in fact, did not do so.

against the Defendant, Clow Valve since, pursuant to the Contract, this Court is an improper forum for resolution of this case.

## CONCLUSION

For the reasons stated herein and in the City's Cross-Motion, the Mayor and City Council of Baltimore City respectfully requests this Court to grant its Motion for Summary Judgment and deny the Motion of Defendant, Clow Valve Company.

_____/s/_____ _____

JUSTIN J. KING
Bar No.: 00819
Principal Counsel
(signed by Robert D. Anbinder,
with permission of Justin J. King)
Department of Law
Room 81
100 N. Holliday Street
Baltimore, Maryland 21202
(410) 396-3945
Fax: (410) 547-1025


_____/s/_____

ROBERT D. ANBINDER
Bar No.: 10885
Assistant City Solicitor,
Department of Law
Room 81
100 N. Holliday Street
Baltimore, Maryland 21202
(410) 396-3204
Fax: (410) 547-1025

_____/s/_____ _____

NICHOLAS JOHANSSON
Bar No.: 27067
Assistant City Solicitor,
(signed by Robert D. Anbinder,

with permission of Nicholas Johansson)
Department of Law
Room 81
100 N. Holliday Street
Baltimore, Maryland 21202
(443) 984-1473
Fax: (410) 547-1025


Attorneys for Defendant

## CERTIFICATION OF MAILING

I HEREBY CERTIFY that on the 17th day of July, 2003, a copy of the foregoing Mayor and City Council of Baltimore City's Reply To Plaintiff, Clow Valve Company's Combined Memorandum In Opposition To Defendant's Cross-Motion For Summary Judgment And In Reply To Defendant's Response To Motion For Summary Judgment were filed electronically to:

> Otho M. Thompson, Esquire
> Mark D. Maneche, Esquire
> Venable, Baetjer and Howard, LLP
> Two Hopkins Plaza
> Suite 1800
> Baltimore, Maryland  21201-2978

and mailed by first class, U.S. mail, postage paid, to:

> Jayna Partain Lamar, Esquire
> Maynard, Cooper & Gale, P.C.
> 1901 Sixth Avenue North
> 2400 AmSouth/Harbert Plaza
> Birmingham, Alabama 35203-2618

 

> _____/s/_____
> ROBERT D. ANBINDER
> Assistant Solicitor
> Bar No. 10885
>
> Attorney for Defendant