IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| CLOW VALVE COMPANY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No.  JFM 02-3136 |
| | ) | |
| MAYOR and CITY COUNCIL OF BALTIMORE CITY | ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF CLOW VALVE COMPANY'S SURREPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Clow Valve Company, a division of McWane, Inc. ("Clow"), by its undersigned attorneys, files this surreply memorandum to the summary judgment reply memorandum ("Reply") of the Mayor and City Council of Baltimore City ("the City").[1]

**ARGUMENT**

**I.   Contrary to the assertions in the Reply, the record clearly demonstrates that the City did not promptly or properly repudiate the valve deliveries.**

In its Reply, the City asserts without specific citation to the record that "the City definitely and unequivocally repudiated the [valve] order through the City's Chief of Utility Maintenance Division for Water and Waste Water, Warren Williams, as soon as he became aware of the facts surrounding their delivery." Reply at 3. The record is to the contrary. No City employee, Williams included, acted in a timely manner to repudiate the valve order.

Less than a month after he placed the valve order with Clow on September 7, 2001,

---

[1] The Court granted leave to file this surreply memorandum by paperless Order dated July 22, 2003.  In the spirit of that Order and consistent with the request on which it was premised, Clow will address herein only the new legal argument and key factual misstatements contained in the City's Reply.  The remaining arguments contained in the City's Reply fail for the reasons set forth in Clow's previous summary judgment papers.

Walter Blimline received a telephone call announcing a delivery of Clow valves. (*See* Ex. C (Blimline dep.) at 78-79.) The City does not dispute that Blimline would have received similar notice of the other 14 or more Clow valve deliveries during the course of the two-and-a-half month delivery process that continued into December of 2001. Far from repudiating the order during this lengthy process or contacting Clow to inquire why Clow valves were being delivered, Blimline "didn't do anything." (Ex. C (Blimline dep.) at 79.)

Department of Public Works ("DPW") general superintendent, August Severn, admits that he also knew that the Clow valve shipments were beginning to arrive in October of 2001. (Ex. 1 (Severn dep.) at 18-19.) Like Blimline, Severn did nothing upon learning these facts.

Finally, although the City's Reply would have the Court believe otherwise, Blimline's supervisor, Warren Williams, acted no more responsibly than his subordinates upon learning of the valve order. Williams "found out [in December of 2001] that the [Clow valves] were being delivered and dropped off at Washington Boulevard." (Ex. J (Williams dep.) at 31.) When Williams questioned Blimline about the valves, Blimline told him that "it was a mistake" (*id.* at 30, 32), in other words that the Clow valves had been "[o]rdered by mistake" (*id.* at 30-31). Rather than "definitely and unequivocally repudiat[ing] the order," however, as the City asserts in its Reply, Williams did not investigate the matter further, nor did he contact anyone at Clow about the "mistake." (*Id.* at 32-33.) Instead, he left Blimline to resolve the problem on his own. (*Id.*) It was not until late January or early February 2002 – long after he became aware of the mistaken order – that Williams advised Clow that there had been a mistake and that Clow should pick up the valves it had delivered over the course of two-and-a-half months. (*Id.* at 35-36.)

No reasonable fact-finder could conclude based on this undisputed testimony that the City promptly, reasonably or "unequivocally" repudiated the September 7, 2001 valve order.

**II.     The City's argument that only the Board of Estimates may ratify has no legal support and is completely inconsistent with the way the City does business.**

The City argues for the first time in its Reply that Clow's ratification argument fails because only the City's Board of Estimates ("BOE") may ratify an allegedly unauthorized valve order. Reply at 4-5. The City cites no legal authority for this completely illogical argument other than a general reference to the Baltimore City Charter. *See id.* at 5. In fact, the undisputed manner in which the City purchases goods completely undermines this contention.

The *only* involvement that the BOE has in the entire purchasing process is to approve the initial contract. Where, as here, the contract is a requirements contract, that initial approval includes an "estimate" of the amount of goods that may be purchased pursuant to the contract. (*See* ex. F (5/12/99 Agreement); ex. G (5/2/01 Agreement).) The City's purchasing department then issues purchase orders from time to time pursuant to the contract. Those purchase orders may actually exceed the estimated amount of the contract, even without BOE approval. (*See* ex. H ("Special Conditions" page from the City's requirements contract).) Such was the case here.

Finally, the purchasing department forwards the purchase order to the individual authorized to purchase the goods on behalf of the City – in this case, Blimline. (*See* ex. C (Blimline dep.) at 51.) It is then up to that individual and his or her supervisors and subordinates to take all of the actions necessary to place an order for the goods, to receive the goods, and to retain or use the goods. Again, this is exactly what occurred here within the DPW.

Thus, once the BOE approves the initial contract, it has no further involvement in the purchasing process, nor as a practical matter could it or should it. It therefore defies logic to argue that the BOE must ratify an allegedly unauthorized order. The City's own corporate structure makes it essentially impossible for the BOE to do so.

The City, like any other corporate or governmental entity, places product orders through

delegated individual employees, not through formal board action. Those same employees who place the orders and who have knowledge thereof are the ones to whom the City logically delegates the duty to accept or reject the products delivered. After all, the BOE would have had no idea which valves Blimline did or did not order, nor would it have known whether those valves conformed with the order and met City specifications. This is perhaps why the City does not argue that only the BOE may accept or reject goods ordered on behalf of the City, which would necessarily be true if only the BOE could ratify an unauthorized order.[2]

Moreover, the ratifying conduct extended to ranking DPW officials like Williams and Severn – who, along with Blimline, clearly had the delegated authority to take action relating to the valve order. Williams and Severn admittedly had knowledge of the order and failed to act even reasonably promptly, if at all, to advise Clow of what Williams clearly knew to be a "mistake." *See*, *e.g.*, *In re Uwimana*, 274 F.3d 806, 813 (4th Cir. 2001) (ranking Rwandan embassy employee's actions constituted ratification on behalf of Rwandan government). No one else from the DPW conveyed to Clow even the slightest doubt about the propriety of the order while the 15 or more separate valve shipments were being delivered. Furthermore, *the City itself* – not Blimline, Williams or Severn – authorized and tendered partial payment for the order. These were clear acts of ratification by those with the particular knowledge and ability to ratify.

**III.    The City's assertion of a new exhaustion of administrative remedies defense in an Amended Answer for which it neither sought nor received leave of court to file, and for which it never obtained written consent from Clow, was a complete nullity.**

The City's exhaustion of administrative remedies argument has no application here because Clow's summary judgment arguments are not centered in the City's contracts. In any

---

[2]    The City argues on the one hand that Williams could and did repudiate the valve order on behalf of the City, yet only the BOE – not Williams or anyone else from the DPW – could ratify the order on behalf of the City. These obvious contradictions further undermine the latter assertion.

event, Rule 15(a) clearly states that where, as here, a defendant attempts to amend its answer more than 20 days after service of its original answer, the defendant "may amend [its] pleading only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). In this case, the City attempted to amend its answer almost four months after serving its original Answer. The City neither sought nor received leave of the Court to file its Amended Answer containing the new exhaustion of administrative remedies defense, nor did it obtain written consent to amend from Clow.[3] Accordingly, the Amended Answer is a complete nullity, as is the exhaustion of administrative remedies defense contained therein.[4]

## CONCLUSION

For the reasons set forth herein, as well as the reasons stated in Clow's previous summary judgment papers, the Court should grant Clow's summary judgment motion.

Respectfully submitted,

/s/
Otho M. Thompson
Mark D. Maneche
Venable, Baetjer and Howard, LLP
1800 Mercantile Bank & Trust Building
Two Hopkins Plaza
Baltimore, Maryland  21201
(410) 244-7400

Jayna Partain Lamar
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2618
(205) 254-1000

---

[3] The City argues that counsel for Clow somehow tacitly consented to the amendment during a telephone call, *see* Reply at 13 n.19, during which counsel for Clow actually indicated that Clow would not be moving to strike the ineffective Amended Answer because it was under no obligation to move to strike an ineffective pleading. If the Court were to regard counsel's statement or Clow's failure to move to strike as somehow rendering the amendment effective, it would completely undermine Rule 15(a)'s requirement that the amending party obtain leave of court or written consent prior to the amendment.

[4] In attempting to amend, the City also utterly failed to comply with the requirements of Local Rule 103.6.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of July, 2003, copies of Plaintiff Clow Valve Company's Surreply Memorandum in Support of its Motion for Summary Judgment was transmitted by electronic filing to:

>Robert D. Anbinder, Esquire
>Assistant City Solicitor
>Department of Law
>Room 81
>100 North Holliday Street
>Baltimore, Maryland 21202

>_____/s/_____
>Mark D. Maneche